Filed 7/16/21  P. v. Hernandez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JUAN MANUEL HERNANDEZ,<br><br>    Defendant and Appellant. | F080886<br><br>(Kern Super. Ct. No. MF012467A)<br><br><br>**OPINION** |

-ooOoo-

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth R. Green, Jr., Judge.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Franson, J. and Smith, J.

## INTRODUCTION

Appellant and defendant Juan Manuel Hernandez pleaded no contest to assault with a firearm and was placed on probation; this court affirmed his conviction on appeal. Defendant subsequently filed a motion to vacate his conviction and claimed it was supported by newly discovered evidence of actual innocence. The trial court conducted a hearing and denied his motion.

On appeal, his appellate counsel has filed a brief that summarizes the facts with citations to the record, raises no issues, and asks this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant filed his own supplemental letter brief. We affirm.

## FACTS[1]

On April 17, 2017, defendant was at his home with Kelli Hernandez (Kelli).[2] Max Prieto, Kelli's former boyfriend, walked to defendant's residence because he was going to ask Kelli for his property. Defendant threatened Prieto with a shotgun, punched Prieto, and hit him with the shotgun, causing a cut and a facial fracture. When deputies responded to the residence, defendant denied using a shotgun, but Kelli said he hit Prieto with it. The deputies obtained a search warrant and found the shotgun and methamphetamine in the house.

The responding deputies believed defendant was under the influence of a controlled substance, although defendant denied it. The deputies took a urine sample from defendant, and the results were negative. (*People v. Hernandez*, *supra*, 2018 WL 2112175 at pp. *1, *3, *4 & fn. 1 [nonpub. opn.].)

---

[1] On August 27, 2020, this court granted defendant's "Motion to Incorporate by Reference," filed on August 18, 2020, and incorporated by reference the record from his first appeal in *People v. Hernandez* (F076191, May 8, 2018) 2018 WL 2112175, into the instant appeal.

[2] We refer to this witness by her first name because of the commonality of last names; no disrespect is intended.

## PROCEDURAL BACKGROUND

On April 19, 2017, a felony complaint was filed in the Superior Court of Kern County charging defendant with count 1, assault with a firearm, a Winchester 12-gauge shotgun (Pen. Code, § 245, subd. (a)(2)),[3] count 2, possession of methamphetamine while armed with a loaded and operable firearm (Health & Saf. Code, § 11370.1, subd. (a)), count 3, assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)), with a great bodily injury enhancement (§ 12022.7), count 4, possession of a loaded and operable firearm while under the influence of methamphetamine (Health & Saf. Code, § 11550, subd. (e)), and count 5, misdemeanor possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)).

**Plea agreement**

On April 27, 2017, the trial court dismissed counts 2 and 4 on the motion of the prosecution. (*People v. Hernandez, supra,* 2018 WL 2112175 at p. *1.)

On May 5, 2017, defendant pleaded no contest to count 1, assault with a firearm, pursuant to a negotiated disposition to be placed on probation, with service of up to one year in county jail. The court granted the prosecution's motion to dismiss counts 3 and 5. The parties stipulated to a factual basis pursuant to *People v. West* (1970) 3 Cal.3d 585.

**Motion to withdraw plea**

On June 2, 2017, defendant moved to withdraw his plea on the ground that he had received ineffective assistance of counsel. Defendant told the court he was not guilty of the drug charges and his urine test would be negative. The court explained that his plea had nothing to do with the drug charges, and his greatest exposure came from other possible charges. The court explained that he could be exposed to 17 years in prison on count 3, assault with force likely to produce great bodily injury plus possible

---

[3] All further statutory citations are to the Penal Code unless otherwise indicated.

enhancements. The court also explained that he could be guilty of the significant firearm offenses without discharging the weapon.

The court advised defendant it would appoint another attorney to review the matter. Defendant complained that his firearm was registered. The court replied that even if he legally owned the weapon, that did not mean he legally used it. " 'So there's a lot of factual and legal considerations there that have a lot of impact on how this all plays. [¶] I'm just telling you what is a possibility, not what is going to be or what could be. I'm just telling you what is possible.' " (*People v. Hernandez, supra,* 2018 WL 2112175 at pp. *1–*3.)

On June 9, 2017, defendant appeared with his new counsel, who stated he reviewed the matter with defendant, and he would withdraw his motion. The court asked defendant if he agreed with his attorney, and defendant said yes. (*People v. Hernandez, supra,* 2018 WL 2112175 at p *3.)

**Sentencing hearing**

On June 14, 2017, the court conducted the sentencing hearing. Defense counsel argued defendant should serve no more than six months in jail or, in the alternative, he should be placed on work release. The prosecutor argued defendant should receive nine to 12 months. (*People v. Hernandez, supra,* 2018 WL 2112175 at p. *3.)

The trial court suspended imposition of sentence and placed defendant on probation for three years, subject to certain terms and conditions, including serving nine months in county jail.

**Defendant's first appeal**

On August 16, 2017, defendant filed a notice of appeal and requested a certificate of probable cause. He argued he was innocent, and the prosecutor failed to comply with discovery about his negative drug test and other matters until after he entered the plea. The trial court denied the request for a certificate of probable cause.

4.

His appellate attorney filed a *Wende* brief. Defendant filed a supplemental letter brief and argued the charges against him were false, he was innocent, and he was pressured into accepting the plea offer. (*People v. Hernandez, supra,* 2018 WL 2112175 at pp. *1, *3.)

On May 8, 2018, this court affirmed defendant's convictions and rejected his contentions.

> "Despite defendant's claims of innocence now, he pled no contest to assault with a firearm. 'A guilty [or no contest] plea admits every element of the crime and constitutes a conviction. [Citations.] For that reason, … issues going to the determination of guilt or innocence are not cognizable on appeal; review is instead limited to issues going to the jurisdiction of the court or the legality of the proceedings, including the constitutional validity of the plea.' [Citations.] We do not consider, for example, whether his firearm was loaded. The no contest plea disposed of this issue. We also note that the drug charges were not relevant to his plea to the assault charge, a point the judge clarified for defendant.

> "Defendant also argues he was pressured into accepting the plea by the prosecutor, who refused defendant access to his discovery packet and 'practically brain washed him into taking the deal,' and by the judge, who lied or misspoke regarding his maximum exposure. Defendant claims he could have beaten the charges if he had had his discovery packet, and he wants an opportunity to prove his innocence.

> "We see nothing in the record to suggest the prosecutor pressured, much less brain washed, defendant into accepting the plea. And the trial court's explanation of defendant's possible 17-year exposure on count 3 accurately reflected what could happen if defendant withdrew his plea and the prosecution amended the charges to include an allegation of personal use of a firearm under section 12022.5, subdivision (a), which carries up to a 10-year term on its own. The court made it very clear it was trying to give defendant a possible outcome so he could make an educated choice, and was not trying to pressure him into any decision.

> "As for beating the charges, defendant is correct that he would not have been convicted of being under the influence of a controlled substance following the negative drug test. But the evidence was potentially sufficient to support other charges and allegations. The record establishes that defendant was well aware of his opportunity to prove his innocence at

5.

trial, but after discussion of the prospects, he very reasonably decided to forgo that opportunity and accept the offer of probation with a short jail term to avoid the risk of multiple convictions and a long prison term. For these reasons, he changed his mind about withdrawing his no contest plea….” (*People v. Hernandez, supra,* 2018 WL 2112175 at pp. *3–4, fn. omitted.)

## DEFENDANT'S MOTION TO VACATE

**Defendant's motion to vacate**

On December 30, 2019, defendant filed a motion to vacate his conviction pursuant to section 1473.7 and asserted there was newly discovered evidence that established his actual innocence. Defendant asserted that after he was sentenced in this case, he discovered that a neighbor, Randall Bradshaw, had witnessed a significant portion of the incident that proved he was innocent.

Defendant submitted several documents in support of his motion.

### *Bradshaw's declaration*

Defendant submitted Bradshaw's sworn declaration, dated October 18, 2019. In the declaration, Bradshaw stated he lived four houses away from defendant, and "only recently" gave this information to defendant because he did not want to be involved.

Bradshaw declared that on the day of the incident, he was walking back to his house from the store. He was about 50 to 60 feet away from defendant's house when he saw someone on the property who looked like he was on drugs. Bradshaw stated he heard defendant "calmly" tell the person to " 'please leave my property, I got my kids, and relatives, and friends here and need you to leave,' " and " 'please leave my yard.' " Bradshaw stated defendant "appeared to be polite and very patient with the individual" and did not show any signs of aggression.

Bradshaw stated that defendant turned away to walk into his house, but the individual followed and "darted into the house," and it did not appear that defendant expected him to do that. Bradshaw "heard fighting or wrestling noises and saw the

6.

individual run out of the house.  It looked as though the individual was bleeding.  The individual got on his phone, and suddenly a number of cop cars appeared."

### *Defendant's declaration*

Defendant also filed a supporting declaration and stated he had been unable to investigate his case or communicate with his attorney or other people, because he was held in custody from the time of his arrest until his sentencing.  He wanted to go to trial but did not want to remain in custody, and he tried to withdraw his plea because he knew he was innocent.  He only learned about Bradshaw's statement after he was released, and Bradshaw's account was consistent with his memory of the incident.

### *Law enforcement reports*

Also, in support of his motion, defendant also submitted the Kern County Sheriff's Department's investigative reports about the case.  The reports state that deputies responded to defendant's house on a dispatch that he hit Prieto in the head with the butt of a shot gun.  When they arrived, they found Prieto on the street, bleeding from his face, and his shirt was soaked with blood.

Deputy Maokosy reported that he interviewed Prieto at the scene.  Prieto said he went to defendant's house peacefully to speak with Kelli and ask for his property, and he did not intend to provoke defendant.  Prieto knew defendant because they went to school together.  Prieto said he was standing outside the door and talking to Kelli and heard what sounded like a shotgun racking.  Prieto said all of a sudden, defendant opened the door and pointed a shotgun at him and asked what he was doing at his house.  Prieto told him that he was just trying to get his property back from Kelli and did not want any trouble.  Defendant told Prieto, " 'Get the f[**]k out of here.' "

Prieto said defendant put the shotgun down and punched him once in his mouth.  Prieto and defendant started fighting outside the doorway.  Prieto said defendant picked up the shotgun and hit him in the face.  Prieto described the weapon as a black shotgun "with a side saddle for shotgun shells," and it looked like the type used by the sheriff's

department.  Prieto said he lost consciousness for a few seconds and fell.  Prieto got up and walked to a nearby business to call the sheriff's department.

Prieto had a two-inch cut on the left side of his face and a swollen lip.  He was treated at the scene and transported to the hospital, where he was diagnosed with a left-sided facial fracture and required several stitches.

Deputy Evans reported he interviewed defendant at the scene, advised him of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, and defendant agreed to answer questions.  Defendant said he was inside his house with Kelli, who said her " 'ex' " was there.  Defendant looked outside and saw Prieto standing outside his front yard fence.  Defendant said he opened his front door and asked Prieto what he was doing.  Prieto said he wanted his " 'stuff' " from Kelli.  Defendant asked Kelli if she had any property belonging to Prieto; she said she did not have anything.  Defendant told Prieto that Kelli did not have any of his belongings and to leave his property.  Defendant said Prieto entered the front gate and challenged him to a fight.  Defendant was standing in the doorway, and Prieto walked up and " 'socked' " him in the face.  Defendant said they started fighting in the doorway and Prieto eventually fled.  Defendant did not have any visible injuries and said Prieto never hit him because he avoided the punch.  Defendant was asked why Prieto had a cut on his face, and defendant said, " 'I cut people when I punch them.' "

Deputy Evans asked defendant if he hit Prieto with a shotgun, to which defendant answered, "No."  Evans asked defendant if he owned a shotgun, and if he did, where he kept it, and was it loaded.  In response to Evans's questions, defendant said he had a shotgun and kept it in a case next to the living room, but it was not loaded, and he never pointed it at Prieto.

Deputy Evans also interviewed Kelli at the scene.  She said they were inside the house when she looked out the front window and saw Prieto; she told defendant that her ex-boyfriend was there.  Defendant opened the front door and asked Prieto what he

8.

wanted. Prieto said he wanted his " 'stuff.' " Kelli denied that she had any of his things. Defendant told Prieto that Kelli did not have his belongings and to get off his property. Kelli said defendant and Prieto began to fight inside the house. Kelli saw defendant "grab his shotgun and hit [Prieto] with it." Kelli said she ran into a bedroom and hid in a closet. Evans asked Kelli if she could identify the shotgun and if she knew it was loaded. She said the shotgun was black, and she did not know if it was loaded.

Based on the statements from Prieto and Kelli about a shotgun, Deputy Maosky obtained a search warrant for defendant's house. During the search, he found a 12-gauge Winchester black shotgun that matched Prieto's description, numerous live shells throughout the house, and a substance that later tested positive for methamphetamine.

Defendant was arrested and transported to the sheriff's department. Deputy Maokosy advised defendant of the *Miranda* warnings, and defendant again agreed to answer questions. Defendant said Prieto came to his house and asked Kelli for his belongings. Defendant said he told Prieto to leave, but Prieto did not listen. Defendant said he started arguing with Prieto, opened his screen door, and they both started fighting each other. Defendant said he punched Prieto about four times. Prieto did not hit him because "he was too fast for him." Defendant said Prieto left his house and walked away, and defendant noticed Prieto was bleeding from his face.

Deputy Maosky asked defendant if he hit Prieto with a shotgun, and defendant said no, that he only used his hands. Maosky examined defendant's hands, and he did not see any visible injuries or redness. He asked defendant if he threatened Prieto with a shotgun, and defendant said no. Defendant denied that he used methamphetamine, and denied the drugs found in the house belonged to him.

Deputy Maosky believed defendant showed signs consistent with being under the influence. Defendant denied using drugs and submitted a urine test. Defendant was found in possession of apparent methamphetamine.

9.

**The prosecution's opposition**

On January 24, 2020, the prosecution filed opposition to defendant's motion to vacate his conviction. It summarized the law enforcement reports submitted by defendant and argued "[t]here is no newly discovered evidence here, and Mr. Bradshaw's statement is merely cumulative and based on his perspective of the incident from fifty to sixty feet away. Neither the defendant … nor his girlfriend – Kelli Hernandez alleged that Mr. Prieto barged into their home and attacked the defendant. While it is possible that the two entered the home at some point during their struggle, no one alleged that Mr. Prieto entered the home and attacked the defendant. It is highly unlikely that even with a statement from Mr. Bradshaw, that a different result would have been obtained. The defendant now wants to claim self[-]defense which he never claimed before. He is not claiming that he was not involved at all or that he did not fight with the victim. This is not an issue of actual innocence."

**The court's denial of the motion**

On February 11, 2020, the court conducted a hearing on defendant's motion to vacate, stated it had read the parties' documents, and asked if they wanted to further argue the matter. Defense counsel stated the motion was filed as soon as possible once defendant learned about Bradshaw's information. The court agreed that defendant's motion had been brought in a timely manner.

The prosecutor argued that Bradshaw's statement did not constitute new evidence of defendant's actual innocence, the other witnesses stated there was a fight between Prieto and defendant, and it started outside the house and moved inside. Defense counsel responded that Bradshaw was a witness who was credible and not biased, and his statement contradicted the accounts of the other people.

The court denied defendant's motion: "[T]he grounds for the denial is that there were sufficient, there was a large number of people that saw it sufficiently different, and when you're asking for an actual denial, there is significant evidence put forth by the

10.

People about [defendant's] statement that the Court considered and which would have been directly contradictory to the new witness. So [defendant's] own statement indicated that his, the new witness would have at best contradicted, said that he was lying to the police officer, so I'm going to deny the motion."

On March 5, 2020, defendant filed a timely notice of appeal from the trial court's denial of defendant's motion to vacate his conviction.

## DISCUSSION

As noted above, defendant's counsel has filed a *Wende* brief with this court. The brief also includes the declaration of appellate counsel indicating that defendant was advised he could file his own brief with this court.

By letter on October 21, 2020, we invited defendant to submit additional briefing. On November 19, 2020, defendant filed a supplemental letter brief and raised several issues.

Defendant asserts his section 1473.7 motion to vacate should have been granted and the trial court "made a legal mistake" by charging him with assault with a firearm and placing him on probation because it overlooked evidence of self-defense, that Prieto illegally trespassed onto his property, and defendant lawfully exercised his Second Amendment rights to defend himself, others, and his property. Defendant asserted the law enforcement reports that he filed in support of his petition supported his claim of self-defense, the court "simply ignored" the facts, Prieto was the aggressor and refused repeated instructions to leave, defendant was the actual victim, he had every right to act, and his conviction should be "exonerated."

## I.     Section 1437.7

Defendant's motion to vacate was filed pursuant to section 1473.7, subdivision (a)(2), that provides in pertinent part that "[a] person who is no longer in criminal custody may file a motion to vacate a conviction" on the basis that "[n]ewly discovered evidence of actual innocence exists that requires vacation of the conviction or

11.

sentence as a matter of law or in the interests of justice." A motion based on newly discovered evidence must be filed "without undue delay from the date the moving party discovered, or could have discovered with the exercise of due diligence, the evidence that provides a basis for relief under this section." (*Id.*, subd. (c).)

"The court shall grant the motion to vacate the conviction … if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)." (§ 1473.7, subd. (e)(1); *People v. Perez* (2020) 47 Cal.App.5th 994, 997.) The preponderance standard means "more likely than not." (*People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1305, fn. 28.)

The denial of a motion brought under section 1473.7 is subject to the independent standard of review. (*People v. Vivar* (2021) 11 Cal.5th 510, 524.) Factual determinations that are based on the credibility of witnesses the trial court heard and observed are entitled to particular deference, even though courts reviewing such claims generally may reach a different conclusion from the trial court on an independent examination of the evidence even where the evidence is conflicting. (*Id.* at p. 527.) Where the facts derive entirely from written declarations and other documents, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, the trial court and this court are in the same position in interpreting written declarations when reviewing a cold record in a section 1473.7 proceeding. (*Id.* at p. 528.)

## II.     Defendant was not Eligible for Relief

Section 1473.7 became effective on January 1, 2017, and represented the Legislature's efforts to "broadened the standards to challenge guilty pleas involving advisements concerning immigration consequences." (*People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1063; Stats. 2016, c. 739, § 1.) To that extent, section 1473.7, subdivision (a), currently states that a motion to vacate may be based on three possible grounds: (1) the conviction or sentence is legally invalid due to prejudicial error

12.

damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere, (2) newly discovered evidence of actual innocence exists that requires vacation of the conviction or sentence as a matter of law or in the interests of justice, or (3) a conviction or sentence was sought, obtained, or imposed on the basis of race, ethnicity or national origin.

There is no indication that a motion brought under section 1473.7, subdivision (a)(2) is limited to immigration cases. As a preliminary matter, however, a person may file a motion under section 1473.7 only if that person "is no longer in criminal custody." (§ 1473.7, subd. (a); *People v. Cruz-Lopez* (2018) 27 Cal.App.5th 212, 221.)

A person on probation or parole is in "constructive custody" and not eligible to obtain relief under section 1473.7. (*People v. Cruz-Lopez, supra,* 27 Cal.App.5th at pp. 220–221; *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1130–1131.) On June 14, 2017, the court placed defendant on probation for three years. On December 30, 2019, defendant filed his motion to vacate. On February 11, 2020, the court heard and denied the motion.

It thus appears defendant was still on probation and in "constructive custody" at the time he brought his motion, and he was not eligible for relief under section 1473.7. (*People v. Cruz-Lopez, supra,* 27 Cal.App.5th at p. 221.)

## III. Defendant Failed to Establish Evidence of "Actual Innocence"

Even assuming defendant was no longer in "custody," however, he still had the burden of proving by a preponderance of the evidence that such evidence established his "actual innocence."

The standard for determining that newly discovered evidence demonstrates "actual innocence" is whether " 'such evidence casts "fundamental doubt on the accuracy and reliability of the proceedings. At the guilt phase, such evidence, if credited, must

undermine the entire prosecution case and point unerringly to innocence or reduced culpability. [Citations.]" "[N]ewly discovered evidence does not warrant relief unless it is of such character 'as will completely undermine the entire structure of the case upon which the prosecution was based.' " [Citations.]' [Citations.]" (*In re Lawley* (2008) 42 Cal.4th 1231, 1238–1239.)

The moving party carries a "heavy burden of demonstrating he is actually innocent. ' "Depriving" an accused of facts that "strongly" raise issues of reasonable doubt is not the standard. [T]he newly discovered evidence must "undermine[ ] the prosecution's entire case. It is not sufficient that the evidence might have weakened the prosecution case or presented a more difficult question for the judge or jury. [Citations.]" [Citation.]' [Citation.]" (*In re Hardy* (2007) 41 Cal.4th 977, 1017.) "If 'a reasonable jury could have rejected' the evidence presented, a petitioner has not satisfied his burden. [Citation.]" (*In re Lawley, supra,* 42 Cal.4th at p. 1239.)

### A.   Analysis

In his letter brief to this court, defendant asserted that Bradshaw's declaration, plus the law enforcement reports that he filed in support of his petition, supported his claim of self-defense and "actual innocence." However, the reports undermine defendant's credibility about the incident. In his interviews with the investigating deputies, defendant said he told Prieto to leave his property, but Prieto challenged him to a fight, Prieto walked up to the front door, punched defendant in the face, and they fought in the doorway. Defendant denied pointing a shotgun at Prieto or threatening him with it. Defendant claimed he only hit Prieto with his fists, and he cut Prieto's face with a punch, even though there were no visible signs of redness or injuries on defendant's hands. In contrast, Kelli stated that when defendant and Prieto started to fight, she saw defendant "grab his shotgun and hit [Prieto] with it." After executing the search warrant, deputies found a shotgun consistent with Prieto's description.

14.

Bradshaw's statements do not refute the statements from Kelli and Prieto that defendant used the shotgun to hit Prieto in the face. Bradshaw stated that defendant turned away to walk into his house, but Prieto followed defendant and "darted into the house," and it did not appear that defendant expected him to do that. Bradshaw stated he "heard fighting or wrestling noises and saw [Prieto] run out of the house. It looked as though [Prieto] was bleeding."

Bradshaw's account is not inconsistent with Kelli's statement that defendant grabbed his shotgun and used it to hit Prieto in the face. Indeed, Bradshaw did not observe what happened inside the house but confirmed that Prieto was bleeding when he walked out of the house.

More importantly, Bradshaw's statement does not address the serious credibility problems with defendant's statements to the investigating deputies. Defendant now claims he was entitled to use his shotgun to defend himself and his property, yet he repeatedly insisted to the deputies that he never held or used the shotgun against Prieto during the incident, and they merely engaged in a fistfight. As noted by the trial court, defendant could have raised his alleged self-defense claims and his purported right to use his shotgun if he had gone to trial, completely independent of Bradshaw's statements, but declined to do so.

We cannot conclude that Bradshaw's statement established defendant's actual innocence – that it undermined the potential prosecution case and pointed unerringly to innocence – such that vacation of his conviction is required as a matter of law or in the interests of justice.

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## DISPOSITION

The judgment is affirmed.

15.